IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| GREGORY A. BLANCHARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:20-CV-170-BQ |
| | § | |
| DENISE VIA and DIRECT HEALTH CARE, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant Denise Via's Motion for Take Nothing Judgment (ECF No. 142); (2) Defendant Direct Health Care, Inc.'s (DHC) Post-Verdict Motion for Judgment as a Matter of Law (ECF No. 143); (3) Defendants' Motion for Costs and Brief in Support (ECF No. 144) along with Defendants' Bill of Costs (ECF No. 145); and (4) Plaintiff Gregory A. Blanchard's Motion for Award of Attorney's Fees, Costs, and Expenses, and Brief in Support. ECF No. 148.

Following a four-day trial, the jury returned a favorable verdict on Blanchard's quantum meruit claim against DHC. ECF No. 139. DHC now moves for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, seeking to set aside the jury's verdict. ECF No. 143. Because the evidence adduced at trial fails to provide a legally sufficient basis to support the jury's finding that Blanchard performed services for which he reasonably notified DHC he expected compensation, the Court **GRANTS** DHC's motion. ECF No. 143. Further, the Court **GRANTS** Via's Motion for Take Nothing Judgment. ECF No. 142. In light of the foregoing, the Court **DENIES** Blanchard's Motion for Award of Attorney's Fees (ECF No. 148), and **DENIES** without prejudice Defendants' Motion for Costs under Fed. R. Civ. P. 68.

I. Background

Blanchard alleged claims under Texas law against Defendants Denise Via and DHC for: (1) promissory estoppel; (2) negligent misrepresentation; (3) quantum meruit; (4) common law fraud; and (5) unjust enrichment. ECF No. 126. The parties tried the case to a jury, which returned a verdict in favor of Blanchard only as to the quantum meruit claim against DHC. ECF No. 139. The jury found that DHC owed Blanchard $35,000 for the compensable work Blanchard performed for DHC. *Id.* at 12.

Defendants initially moved during trial—both at the close of Blanchard's case in chief and after resting their own case—for judgment as a matter of law under Rule 50(a). The Court denied the motions on the record. DHC now renews its motion under Rule 50(b) (ECF No. 143), to which Blanchard has filed a response (ECF No. 152) and appendix in support. ECF No. 153. Blanchard has not responded to Via's Motion for Take Nothing Judgment, and Defendants Via and DHC have filed a response to Blanchard's Motion for Attorney's Fees. ECF Nos. 154, 155.

II. Standard of Review

"A motion for judgment as a matter of law in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (alteration omitted) (quoting *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000)). Judgment as a matter of law is appropriate where "a party has been fully heard by the jury on a given issue, and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue." *Id.* (quoting *Ford*, 230 F.3d at 830).

In reviewing a Rule 50(b) motion, a court should consider all evidence in the record and draw "all reasonable inferences in favor of the nonmoving party." *Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004). Importantly, the court must refrain from

making credibility determinations or otherwise weighing the evidence—functions that are within the sole province of the jury. *Id.* Instead, "the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* (citation omitted).

A court should not grant judgment as a matter of law "unless the facts and inferences point 'so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion.'" *Flowers*, 247 F.3d at 235 (quoting *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1322 (5th Cir. 1994)). "In other words, the 'jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.'" *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039–40 (5th Cir. 2011) (quoting *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008)).

### III. Discussion

#### A. The Parties' Positions

DHC asserts that (1) the law bars Blanchard from recovering under quantum meruit for services he provided in contemplation of a future business opportunity, and (2) the record lacks legally sufficient evidence demonstrating that DHC had reasonable notice Blanchard expected compensation for his services. Def.'s Post-Verdict Mot. for J. as a Matter of Law 2, ECF No. 143 [hereinafter Mot.]. Citing certain trial testimony by Blanchard, DHC argues that the evidence reflects Blanchard provided services in anticipation of purchasing DHC—not with the expectation of monetary compensation. *Id.* at 3. Given this evidence, DHC maintains that Blanchard cannot recover on the verdict because Texas law provides that a future business advantage or opportunity "cannot form the basis of an action for quantum meruit." *Id.* at 6–7 (citing cases in support). Specifically, DHC cites two Texas courts of appeals cases—*Peko Oil USA v. Evans*, 800 S.W.2d

3

572 (Tex. App.—Dallas 1990, writ denied) and *Richter v. Wagner Oil Co.*, 90 S.W.3d 890 (Tex. App.—San Antonio 2002, no pet.)—where the courts held that quantum meruit does not authorize recovery for services rendered in expectation of a future business opportunity. *Id.* at 7–8. According to DHC, Blanchard cannot recover under quantum meruit as a matter of law because he provided services expecting to purchase DHC—not to receive compensation. *Id.* at 8.

In addition, DHC contends that Blanchard failed to establish an essential element of his quantum meruit claim—that he provided DHC reasonable notice he expected compensation for his services. *Id.* at 9. In DHC's view, because Blanchard provided services "with expectation of a future business opportunity, rather than for compensation, the evidence was legally insufficient on said essential element of [Blanchard's] claim." *Id.*

Blanchard, on the other hand, maintains that the jury had a significant amount of testimony upon which to rely in making its determination. Resp. 3, ECF No. 152. Relief under Rule 50(b), Blanchard contends, is therefore inappropriate. *Id.* at 3–4. Specifically, Blanchard points to the Purchase Agreement,[1] which he believes put DHC on notice that his services had value for which he expected compensation. *Id.* at 4. Blanchard references several documents that he claims demonstrate he rendered services even after the parties signed the Purchase Agreement on February 7, 2019, thereby supporting the jury's $35,000 award. *Id.*

As to DHC's legal argument, Blanchard contends this case presents factual distinctions—namely, the breakup fee language in the Purchase Agreement—that distinguish it from the cases cited by DHC and permit him to recover under quantum meruit. *Id.* at 5. Blanchard argues that while he did testify that he "provided services in hopes of being able to buy DHC," the breakup

---

[1] Before trial, the Court granted summary judgment in favor of Defendants as to Blanchard's breach of contract claim and held that the Purchase Agreement did not constitute an enforceable contract. ECF No. 67, at 18–19.

fee in the Purchase Agreement nevertheless reflects his expectation of compensation "if the proposed business opportunity or transaction did not occur." *Id.*

In support, Blanchard cites to *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942 (Tex. 1990), but he does not address any of the cases cited by DHC.[2] *Id.* In Blanchard's view, the Texas Supreme Court's holding in *Vortt*, along with "the unique and specific breakup fee language in the Purchase Agreement," conclusively resolves the present motion in his favor. *Id.* at 7.

### B. Relevant Case Authority

The Court first turns to a review of the relevant case law regarding quantum meruit claims. To assert a viable quantum meruit claim, a plaintiff must show that (1) he provided valuable services or materials (2) "for the person sought to be charged" (3) that the person sought to be charged accepted, used, and "enjoyed," and (4) he did so "under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Vortt*, 787 S.W.2d at 944 (quoting *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex. 1985)).

As DHC observes, the general rule in Texas is that an "expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim." *Richter*, 90 S.W.3d at 895; *accord Peko Oil*, 800 S.W.2d at 576–77 ("We conclude that an expectation of a future business advantage or opportunity cannot form the basis of a quantum meruit claim."); *Anubis Pictures, LLC v. Selig*, No. 05-19-00817-CV, 2021 WL 805214, at *12 (Tex. App.—Dallas Mar. 3, 2021, no pet.) ("Finally, it is elementary in the law governing quantum meruit that no recovery can be had for preliminary services that are performed with a view to obtaining business through

---

[2] Similarly, DHC makes no mention of the *Vortt* case or how it impacts the question before the Court. The parties' analysis of the interplay between these cases and related caselaw would have significantly aided the Court's resolution of this issue.

5

a hoped-for contract."); *see also Terra Nova Scis., LLC v. JOA Oil & Gas Hous., LLC*, 738 F. Supp. 2d 689, 697 (S.D. Tex. 2010) ("[T]he general rule in Texas appears to be that quantum meruit cannot be based upon a future business opportunity."). The Fifth Circuit, while admittedly not construing Texas law, has acknowledged this general principle as well.[3] *See Anderson v. Iceland Seafood Corp.*, No. 94-60862, 1996 WL 46554, at *2 (5th Cir. 1996) (per curiam) ("[A] claimant is not entitled to recover in *quantum meruit* when services have been rendered with the expectation that a future business opportunity or contract—rather than direct compensation—will be forthcoming." (citing cases from multiple circuits)).

Blanchard, however, cites *Vortt* in support of his argument that, despite the general rule regarding business opportunity, "the jury . . . had sufficient evidence upon which it could base its verdict in favor of Blanchard on his claim of quantum meruit." Resp. 7. Blanchard maintains that this case is factually similar to *Vortt. Id.* And in his view, the "specific breakup fee language in the Purchase Agreement" put DHC on notice that Blanchard expected to be compensated for his services in the event the parties did not consummate the sale of DHC. *Id.* at 5, 7.

At first blush, *Vortt* seems to suggest, as argued by Blanchard, that a party can in certain circumstances recover for services performed in expectation of a business advantage. *See Terra Nova*, 738 F. Supp. 2d at 697 & n.2 (acknowledging that *Vortt*'s "quantum meruit claim was

---

[3] At the charge conference, Defendants argued that this principle should be submitted to the jury as a fifth element of quantum meruit. The Court rejected Defendants' request, explaining that the Texas pattern jury instructions on quantum meruit do not contain this element. Further, the Court observed that the cases addressing future business opportunity generally consider it within the fourth element of quantum meruit claims—i.e., analysis of whether a future business opportunity can support a claim is subsumed within the notice element. *See, e.g., Terra Nova*, 738 F. Supp. 2d at 697 (dismissing plaintiffs' quantum meruit claim, where plaintiffs failed to "state any facts . . . support[ing] the contention that they handed over the algorithms or worked on the demonstration with the understanding they were to be paid—the expectation was clearly that if the demonstration went well at the EAGE conference, this might lead to a future business arrangement between the parties"); *Richter*, 90 S.W.3d at 895–96 (concluding plaintiff did not state meritorious claim for quantum meruit in part because he did not establish notice element—i.e., summary judgment evidence demonstrated plaintiff disclosed information in hopes of a business opportunity but did not otherwise notify defendant he expected to be paid for the information).

6

premised on an expected business opportunity/relationship" but also observing that the only element *Vortt* considered was one of notice); *Green Garden Packaging Co. v. Schoenmann Produce Co.*, No. 01–09–00924–CV, 2010 WL 4395448, at *6 n.4 (Tex. App.—Houston [1st Dist.] Nov. 4, 2010, no pet.) ("Thus, the reasoning of *Vortt* supports [plaintiff's] assertion that, in certain circumstances, a party that provides services with the expectation of entering into a future business agreement may seek recovery of the value of those services under a claim for quantum meruit, provided that party presents evidence in support of all other elements of the claim."). Upon closer examination, however, the Court finds *Vortt* distinguishable, and therefore not persuasive, under the facts of this case.

In *Vortt*, the Texas Supreme Court considered "whether the trial court's findings of fact were sufficient to allow Vortt Exploration Company, Inc. (Vortt) to recover under quantum meruit for seismic information provided by Vortt to Chevron U.S.A., Inc. (Chevron)." 787 S.W.2d at 943. Vortt and Chevron negotiated for approximately four years regarding a joint operating agreement. *Id.* at 944. "During the negotiations, Vortt provided Chevron with confidential seismic services, graphics, and maps in an attempt to reach a joint operating agreement," which Chevron then used to drill a producing well. *Id.* Chevron sued Vortt "to invalidate certain leases held by Vortt," and Vortt counterclaimed to recover for the seismic services it provided Chevron under a theory of quantum meruit. *Id.*

The trial court rendered judgment for Vortt on its quantum meruit claim, but the court of appeals reversed and rendered judgment in Chevron's favor. *Id.* In so doing, the court held there was no "factual finding that Vortt furnished this information under such circumstances as to 'reasonably notify Chevron that Vortt expected to be paid for the services and assistance' which were provided." *Id.*

7

Thus, on appeal the Texas Supreme Court only considered whether Vortt had provided reasonable notice to Chevron that Vortt expected compensation—i.e., the fourth element of a quantum meruit claim. *Id.* at 944–45; *see also id.* at 945 (Hecht, J., dissenting) ("I agree with the Court that the only issue presented to us in this quantum meruit case is whether there is any evidence that Vortt . . . gave Chevron . . . seismic information under circumstances as reasonably notified Chevron that Vortt expected to be paid for the information."); *Terra Nova*, 738 F. Supp. 2d at 697 n.2 ("In *Vortt,* the Texas Supreme Court was specifically addressing another element of the quantum meruit claim, whether the defendant had reasonable notice the plaintiff expected to be paid."); *Peko Oil*, 800 S.W.2d at 579 ("Because *Vortt Exploration* was decided on the narrow issue of whether the notification in that case rose to the level of notification required by the fourth element of a quantum meruit claim . . . , we conclude that our Supreme Court has not addressed the question" of whether a valid quantum meruit claim can be based on a future business opportunity.). In reviewing the evidence supporting the fourth element, the court relied on findings of fact made by the trial court, which provided that "Chevron was on notice that Vortt, in performing the services and assistance, expected to join with Chevron in a mutually satisfactory agreement for production of the well," and that Vortt "would not have provided such services and assistance except for such belief." *Vortt*, 787 S.W.2d at 945.

The findings of fact reflected "Chevron knew that Vortt furnished the [seismic] information with the expectation that a joint operating agreement would be reached." *Id.* The court therefore held "that Chevron was reasonably notified that Vortt expected to be paid for the services and assistance which were rendered." *Id.* That is, the trial court specifically found that Chevron was aware Vortt expected to be compensated, and the Texas Supreme Court affirmed that finding. *Id.* ("We hold that *the trial court's findings of fact reflect* that Chevron was reasonably notified that Vortt expected to be paid for the services and assistance which were rendered." (emphasis added)).

The parties apparently did not contest whether Vortt's quantum meruit claim was based on a future business opportunity or advantage, and the Texas Supreme Court did not address the issue. *See id.* at 944–46.

From a plain reading of the opinion, the Texas Supreme Court only considered whether the trial court's findings supported the conclusion that Chevron was reasonably notified that Vortt expected compensation. *Id.* at 944. This Court therefore does not read *Vortt* as eliminating or altering the general rule stated by other courts: that a party cannot recover under quantum meruit where he provides services in anticipation of a future business advantage. *See Terra Nova*, 738 F. Supp. 2d at 697 & n.2. The Texas appellate court in *Peko Oil* reinforces this conclusion in its extensive discussion of *Vortt*, determining that the Texas Supreme Court "has not addressed" whether a plaintiff can "maintain a quantum meruit claim where he has provided services" only "with an expectation of a future advantage or business opportunity." 800 S.W.2d at 575, 579; *see Terra Nova*, 738 F. Supp. 2d at 697 & n.2 (acknowledging that while *Vortt* did not invalidate quantum meruit claim despite being based on furthering a joint operating agreement, Texas rule "appears to be" that quantum meruit recovery "cannot be based upon a future business opportunity").

Moreover, numerous Texas state and federal courts (including the Northern District of Texas) have continued to apply this rule following *Vortt*. *See, e.g., Terra Nova*, 738 F. Supp. 2d at 697; *Richter v. Carnival Corp.*, No. 3:18-CV-2172-N, 2020 WL 1876098, at *5 (N.D. Tex. Apr. 15, 2020) (stating "the expectation of a future business advantage or opportunity cannot form the basis of a cause of action in quantum meruit" (quoting *Peko Oil*, 800 S.W.2d at 576)); *Kemper v. Shelter Mortg. Co.*, No. 3:09-CV-0684-N, 2010 WL 11618802, at *3 (N.D. Tex. Mar. 25, 2010) (referring to the principle that "the expectation of a future business opportunity cannot form the basis of quantum meruit recovery" as "a correct statement of the law"); *Internacional Realty, Inc.*

9

*v. Ferrari*, No. SA–07–CV–0981 XR, 2009 WL 68853, at *2 (W.D. Tex. Jan. 7, 2009) ("Quantum meruit relief cannot be obtained where the benefit is conferred officiously or gratuitously or where the services were rendered to gain a business advantage or where the defendant could not have reasonably believed that the plaintiff expected a fee." (quoting *Peko Oil*, 800 S.W.2d at 577)); *Anubis Pictures*, 2021 WL 805214, at *12 ("*Vortt* does not alter longstanding law that no quantum meruit recovery may be obtained based on services performed with a view toward obtaining a hoped-for contract."); *Harris Fiberglass Materials, Inc. v. Vought Aircraft Indus., Inc.*, No. 2-06-437-CV, 2007 WL 3317655, at *4 (Tex. App.—Fort Worth Nov. 8, 2007, no pet.) ("[T]his evidence shows nothing more than that [plaintiff] anticipated a future business opportunity. Such an expectation cannot form the basis of a quantum meruit claim."); *LTS Grp., Inc. v. Woodcrest Cap., L.L.C.*, 222 S.W.3d 918, 921 (Tex. App.—Dallas 2007, no pet.) (affirming trial court's grant of defendant's motion for judgment notwithstanding the verdict where, *inter alia*, evidence reflected plaintiff performed service "in expectation of a future advantage or business opportunity" and "[t]hus . . . there was no evidence to support the elements" of a quantum meruit claim); *Richter*, 90 S.W.3d at 895; *Peko Oil*, 800 S.W.2d at 579.

Given this weight of authority, and because *Vortt* did not expressly consider whether a plaintiff who provides services in expectation of a business opportunity can assert a viable quantum meruit claim, the Court finds that *Vortt* is not "analogous," as Blanchard argues, to the instant case. Here, DHC directly challenges whether a future business advantage can support a cognizable claim for quantum meruit. The Court must therefore determine whether a plaintiff can recover in quantum meruit where he negotiates for the sale of a business (e.g., a future business advantage or opportunity) but does not, at the outset, provide reasonable notice to the defendant that he expects compensation for any services subsequently provided. As explained below, the Court concludes the answer is "no."

### C. Sufficiency of the Evidence as to Blanchard's Quantum Meruit Claim Against DHC

To recover under quantum meruit, a plaintiff must show that he notified the defendant he expected compensation *prior to or at the time* the defendant accepted the services. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 & n.4 (Tex. 1992); *Peko Oil*, 800 S.W.2d at 578; *Sys. One Holdings LLC v. Campbell*, No. B: 18-cv-54, 2018 WL 4290459, at *6 (S.D. Tex. Aug. 21, 2018), *R. & R. adopted by* 2018 WL 4283127 (S.D. Tex. Sept. 7, 2018). Indeed, the "key consideration is the timing of when the plaintiff informs the defendant that it expects to be paid directly by the defendant," and courts "must focus on what the recipient of the services knew or should have known at the time the services were accepted." *Campbell*, 2018 WL 4290459, at *6 (internal quotation marks, citation, and emphasis omitted).

At trial, Blanchard conceded that he did not expect compensation (other than a future business opportunity) for any services rendered[4] when the parties began negotiating for the sale of DHC. ECF No. 143-1, at 34:10–35:1 (affirming that he guaranteed certain debt in 2018 not with expectation of compensation but in hopes of buying DHC), 35:24–37:13 (maintaining that he made loan payments and rent advances on DHC's behalf only because he intended to buy DHC), 53:12–:21 (averring that by June 2017, he had decided to purchase DHC if certain conditions were met), 63:5–:17 (stating that he performed services to improve DHC's financial condition so that a bank would finance the purchase and he could buy a "better company"), 63:18–66:6 (discussing his provision of services and citing only the 2019 Purchase Agreement in support of testimony that he notified DHC he expected compensation), 66:7–:24 (agreeing that in 2017 and 2018, he provided

---

[4] Blanchard's services included guaranteeing debt, initiating staffing contracts between DHC and Blanchard's senior living facilities, reviewing DHC's financials and making recommendations to cut expenses and increase revenue, making cash payments on DHC's debt obligations, and paying DHC's rental deposit when it moved to a different, less expensive building at Blanchard's suggestion. *See* Pl.'s App. in Supp. of Resp. 1–5, 6–10, 11–18, 23–34, ECF No. 153-1 [hereinafter Pl.'s App.].

11

services in expectation of a future business opportunity), 67:2–:15 (acknowledging that he never invoiced DHC for his services between 2017 and 2020); *see* Resp. 5 (recognizing that "Blanchard's testimony shows that he wanted to buy DHC and, in part, provided services in hopes of being able to buy DHC"). As discussed above in Section III.B., under Texas law the provision of services in expectation of a future business opportunity or advantage cannot support a viable quantum meruit claim. *See, e.g., Terra Nova*, 738 F. Supp. 2d at 697; *Richter*, 2020 WL 1876098, at *5; *Kemper*, 2010 WL 11618802, at *3; *Internacional Realty*, 2009 WL 68853, at *2; *Anubis Pictures*, 2021 WL 805214, at *12; *Harris Fiberglass Materials*, 2007 WL 3317655, at *4; *Richter*, 90 S.W.3d at 895; *Peko Oil*, 800 S.W.2d at 578–79; *cf. Anderson*, 1996 WL 46554, at *2.

Blanchard cites no evidence (and the Court is aware of none) contemporary with or prior to his provision of the services in question that gave DHC reasonable notice he expected to receive compensation for same. Instead, he relies on his trial testimony that the parties' execution of the Purchase Agreement *two years after* the parties began discussions concerning the sale of DHC (and when he provided the services) put DHC on notice that Blanchard expected compensation in the event the sale did not go through.[5] ECF No. 143-1, at 63:24–66:3; *see* Resp. 3–4 (arguing "the Court only need to look to the Purchase Agreement to find sufficient evidence upon which the jury might have based its verdict in favor of Blanchard"), 7 (asserting the parties "memorialized their intent in the Purchase Agreement that Blanchard's services were worth $100,000 per year, and that he would be compensated this amount if DHC didn't sell him the company as promised"). But the Purchase Agreement indisputably cannot supply the requisite notice for services provided during the pre-signing time period, i.e., the two years prior to February 2019. *See, e.g., Heldenfels Bros.,*

---

[5] The Purchase Agreement is the lone evidence supporting Blanchard's argument concerning the notice element. *See* Resp. 3–7. At trial, Blanchard generally referenced "discussions" he had with Via concerning his expectation of compensation. ECF No. 143-1, at 66–67. But he did not supply dates or details as to the substance of such conversations. *Id.*

832 S.W.2d at 41 & n.4; *Peko Oil*, 800 S.W.2d at 578; *Campbell*, 2018 WL 4290459, at *6; *Balfour Beatty Rail, Inc. v. Kan. City S. Ry. Co.*, 173 F. Supp. 3d 363, 442 (N.D. Tex. 2016). Moreover, the Purchase Agreement similarly fails to provide the requisite notice as to the post-signing time period as well.

The Purchase Agreement, which the parties signed February 7, 2019, related to the contemplated sale of DHC to Blanchard. The Purchase Agreement contained the following language regarding Blanchard's purported expectation of compensation:

> That implemented business practices that have been adopted have value. That value shall be $100,000/yr beginning in 2017 for the purpose of compensation in the event of any termination, breakup, liquidation, dispositionany [sic] event which constitutes a material change of any kind.

Pl.'s App. 21. Blanchard agreed at trial that this paragraph was intended to memorialize, or acknowledge, work that he had already performed. ECF No. 143-1, at 75:1–76:3. Indeed, the plain meaning of the foregoing paragraph references the value of "*implemented* business practices *that have been adopted*"—i.e., past actions. Pl.'s App. 21 (emphasis added). Similarly, the preceding two bullet points in the Purchase Agreement also recite only past actions. *See id.* (referencing "a *previous* financial pledge and guarantee" for $90,000, rent advance, and staffing contracts—all "services" rendered prior to the Purchase Agreement's execution (emphasis added)); ECF No. 143-1, at 75:1–:9 (agreeing that at the time he signed the Purchase Agreement, Blanchard had already guaranteed the $90,000 note and executed staffing contracts). Despite Blanchard's argument to the contrary, the evidence at trial reflects that the Purchase Agreement merely documented Blanchard's desire to receive recompense for services he had already rendered to Defendants and could not, therefore, supply notice of future expectation. *Cf. Heldenfels Bros.*, 832 S.W.2d at 41 & n.4; *Peko Oil*, 800 S.W.2d at 578; *Campbell*, 2018 WL 4290459, at *6; *Balfour Beatty Rail*, 173 F. Supp. 3d at 442.

Importantly, as to any services rendered post-agreement, the Purchase Agreement makes no mention of any specific service(s) that Blanchard intended to provide, and that DHC accepted, *after* February 7, 2019. *See* Pl.'s App. 21. Moreover, under the terms set out in the Purchase Agreement, even if Blanchard had not performed one additional service, the parties contemplated that Defendants would nevertheless pay Blanchard "$100,000/yr beginning in 2017 . . . in the event of any" break-up—i.e., Defendants owed Blanchard a break-up fee for past services rendered. *Id.*

Finally, the Court observes that the Purchase Agreement acknowledges Blanchard's already-performed services had "value." *Id.* This acknowledgment, however, does not provide sufficient evidence to support the jury's verdict. That such prior services had value does not equate to placing DHC on notice that Blanchard expected compensation for not-yet performed services. Ultimately, the evidence adduced at trial reflects that the parties always intended the transaction to be a sale of DHC. Blanchard cites no authority, and the Court has found none, supporting the proposition that post hoc conduct or rationalizations can provide the required notice for a viable quantum meruit claim.

Even assuming the parties could alter their intentions more than two years into their negotiations—shifting from the expectation of a business opportunity to the prospect of compensation in the event the sale fell through—the Purchase Agreement provides no notice to DHC as to the expectancy of compensation for future services, as discussed above. Blanchard's trial testimony, as well as a plain reading of the Purchase Agreement, demonstrates Blanchard did not provide any notice to DHC that he expected compensation for services *prior* to actually performing them. At best, the evidence reflects that Blanchard may have provided some services after executing the Purchase Agreement, by signing a $150,000 debt renewal and making loan

payments (Resp. 4),⁶ which does not remedy the lack of notice, particularly where those actions were based on a pre-Purchase Agreement commitment (the loan payments and mere renewal of a prior debt obligation) or were not referenced in the Purchase Agreement itself (the $150,000 debt renewal). Thus, unlike in *Vortt*, where the trial court found the plaintiff had reasonably notified the defendant it expected compensation, there is no evidence in this case to support the notice element.

In sum, the evidence presented at trial reflects that Blanchard either (1) provided services in expectation of a future business opportunity or advantage, or (2) provided services without first notifying DHC that he expected compensation. Because neither scenario provides a "legally sufficient evidentiary basis" to support the fourth element of Blanchard's quantum meruit claim, the jury's verdict in favor of Blanchard on his quantum meruit claim is not supported by legally sufficient evidence. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (explaining that "there must be more than a mere scintilla of evidence in the record to" defeat a Rule 50(b) motion). The Court therefore grants DHC's motion and sets aside the jury's verdict as to Blanchard's quantum meruit claim against DHC.

### D. Via's Motion for Take Nothing Judgment

The jury returned a verdict against Blanchard on each of his five claims (promissory estoppel, negligent misrepresentation, quantum meruit, common law fraud, and unjust enrichment) against Via, finding that she was not liable under any theory. ECF No. 139. Via therefore asks the Court to enter a take nothing judgment against Blanchard.⁷ In conformity with the jury's verdict, the Court hereby **GRANTS** Via's motion. ECF No. 142.

---

⁶ The parties do not dispute, and the evidence conclusively establishes, that DHC fully reimbursed Blanchard for those loan payments. *See* Pl.'s App. 23–34.

⁷ Blanchard apparently will not appeal the jury's verdict in this regard. ECF No. 142, at 2.

### E. Blanchard's Motion for Attorney's Fees

Citing § 38.001 of the Texas Civil Practice and Remedies Code, Blanchard seeks to recover attorney's fees and costs as the prevailing party against DHC on his quantum meruit claim. ECF Nos. 148, 149. To recover under § 38.001, however, a party must prevail on a cause of action. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). In light of the Court's holding that the jury award must be vacated under Rule 50(b), Blanchard is not entitled to recover attorney's fees and costs.

### F. Defendants' Motion for Costs and Bill of Costs

In accordance with Rule 68 of the Federal Rules of Civil Procedure, Defendants ask the Court to order Blanchard to pay the costs they incurred after Defendant Via made an offer of judgment, because the jury award was less favorable than Via's offer. ECF No. 144. In support, Defendants submit Via's Offer of Judgment (dated September 29, 2020), an Affidavit of Benjamin Garcia (Defendants' attorney), and Defendants' Bill of Costs. ECF Nos. 144-1, 144-2.

Because the Court has granted Defendants' Motion for Judgment as a Matter of Law, as discussed herein, and Defendants are the prevailing parties, the Court need not determine whether Defendants are entitled to an award of costs under Rule 68. As the prevailing parties, Defendants may recover taxable costs under Rule 54(d)(1) of the Federal Rules of Civil Procedure. Thus, the Court **DENIES** without prejudice Defendants' Motion for Costs. ECF No. 144.

### IV. Conclusion

For these reasons, the Court **GRANTS** DHC's Motion for Judgment as a Matter of Law. ECF No. 143. Further, the Court **GRANTS** Via's Motion for Take Nothing Judgment (ECF No. 142), and **DENIES** Blanchard's Motion for Attorney's Fees. ECF No. 148. Finally, the Court **DENIES** without prejudice Defendants' Motion for Costs. ECF No. 144. In accordance with

Rule 54(d)(1), the Court directs the Clerk to award taxable costs under 28 U.S.C. § 1920 to Defendants Denise Via and Direct Health Care, Inc.[8]

The Court will enter final judgment of even date herewith.

**SO ORDERED.**

Dated: April 5, 2022.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

---

[8] Blanchard did not object to Defendants' Bill of Costs (ECF No. 145), but instead filed a response to Defendants' Motion for Costs under Rule 68. *See* ECF No. 154.